## ABRAHAM LEGGETT vs. THE BANK OF SING SING.

In the commercial and popular acceptation of the word "due," when employed participially or adjectively after "debt," without adding some verb or participle denoting future time, it is equivalent with "payable at the present time." Accordingly, where the articles of association of a bank provided that no share of stock should be transferred unless the shareholder should previously discharge all debts *due* by him to the association, or should have remaining stock untransferred, sufficient to cover and secure the amount he might *owe* to the association: *Held* that the word "due" was here employed to signify debts presently payable; and that the true construction of the provision was, that to justify the bank in refusing to transfer stock, on the ground of the indebtedness of the holder, the debt must be payable *at the time when the right to refuse the transfer* was claimed; and that the lien did not extend to a promissory note, made by the stockholder and discounted by the bank, which had not yet reached maturity.

APPEAL, by the defendant, from a judgment entered upon the report of a referee. William E. Leggett, brother of the plaintiff, was one of the original subscribers to the articles of association of the Bank of Sing Sing, owned twenty shares

of its stock, and in January 1854, was a director of the bank. At that time he was indorser on the notes of one Thompson, for about $4000, which were discounted by said bank. Thompson died before these notes became due, leaving Leggett his executor. These notes were afterwards protested for non-payment, and Leggett from time to time paid them off, giving his note as executor, indorsed individually, for the balance due. On the 30th day of March, 1855, the last renewal note became due, and was protested for non-payment, and on the 9th day of April following, he paid $300 in cash, and gave a note for $1900, payable the 1st of August. On the 8th and 10th days of May, 1855, the plaintiff, to whom the stock had been assigned by Wm. E. Leggett, for a valuable consideration, demanded a transfer of the same, and exhibited the certificate of the stock and power of attorney to transfer. The certificate of stock reads, that it is transferable, subject to the conditions and stipulations of the articles of association. Article 5, section 3, is as follows: "That no share shall be transferred unless the shareholder shall previously discharge all debts due by him to said association, or shall have remaining stock untransferred sufficient to cover and secure the amount he may owe to the said association." Leggett acted as director up to April 16, 1855, and three dividends were paid to him by being credited on three renewal notes. The bank refused to make the transfer, on the ground that by the articles of association, William E. Leggett was prevented from selling or assigning the said 20 shares of stock, until his indebtedness of $1900 was paid. The answer alleged that William E. Leggett owned no other stock in the Bank of Sing Sing, except the 20 shares above mentioned, and which stock was subject to a lien of the defendants, and was held in *pledge* for the said sum of $1900. The referee, to whom the cause was referred, found the facts as above; and his conclusions of law were, *First.* That William E. Leggett was personally liable to the defendants upon the $1900 note. *Second.* That such note not having matured at the time of the demands severally made upon the defendants for a transfer of such stock to the plaintiff, it was not, within the true

intent and meaning of such articles of association, a debt due
by William E. Leggett to the defendants, of such a character
as to make the $1900 a lien upon such shares of the capital
stock, and did not authorize the bank to refuse making a trans-
fer thereof to the plaintiff, at the time he demanded such
transfer to be made. *Third.* That the plaintiff should have
judgment against the defendants for $2000, besides costs.
And that upon the payment of the judgment the certificate of
such stock should be surrendered up to the defendants.

*G. A. Brandreth*, for the appellant. I. The defendants'
articles of association provide that no share or shares shall be
transferable, unless the shareholder making the transfer shall
previously discharge all debts *due* by him to said association, or
shall have remaining capital stock untransferred sufficient to cover
and secure the amount that he may *owe* to said association.
The words " due" and "owe" are here used as synonymous terms,
and apply to all cases where there is an existing indebtedness
on the part of the shareholder. This provision cannot be con-
strued otherwise. William E. Leggett held only twenty shares
of stock, and on a transfer thereof nothing remained to cover
and secure his indebtedness.

II. The note for $1900, drawn by William E. Leggett, and
indorsed by him, was given for a previous indebtedness, which
had become due and payable before the demand made by the
plaintiff for the transfer of the stock in question, and the note
was not payment of the original demand, and such demand re-
mained due within the meaning of the articles of association.
( *Waydell* v. *Luer*, 5 *Hill*, 448. *Cole* v. *Sackett*, 1 *id.* 516.
*Elwood* v. *Deifendorf*, 5 *Barb.* 398. *Tobey* v. *Barber*, 5 *John.*
68. *Putnam* v. *Lewis*, 8 *id.* 389. *Burdick* v. *Green*, 15 *id.*
247. *Olcott* v. *Rathbone*, 5 *Wend.* 490. *Hill* v. *Beebe*,
3 *Kern.* 557.)

III. The rule of construction applicable to this provision is
the same as that applicable to statutes of a remedial character ;
it must be construed liberally in order to effect the object in

Leggett *v*. The Bank of Sing Sing.

view, which is to be ascertained by looking into the provision itself and the whole subject matter to which it applies.

IV. The certificate of stock of the Bank of Sing Sing provides that W. E. Leggett is entitled to twenty shares of stock, subject to all conditions and stipulations in their articles of association, and transferable only on the books of their banking house. Hence the plaintiff took the stock subject to the claims of the bank against W. E. Leggett. (*Union Bank of George-town* v. *Laird*, 2 *Wheat*. 390.)

*D. D. Field*, for the plaintiff. I. The liability of William E. Leggett, upon the note of William E. Leggett, executor, was not a "debt due" by him within the meaning of the 3d section of the 5th article of association, because that liability was contingent. (1.) The original note was made by Thompson and endorsed by Leggett. Before it became due Thompson died, and William E. Leggett became his executor, and as such renewed the note, indorsing it himself as before. There is no evidence even that any notes, except the original notes of Thompson, were ever protested, or that the indorser's liability upon this was ever fixed in any way. (8 *Barb*. 312.) (2.) Even if his liability had at any time become fixed by the protest of some one of the series of renewal notes, that fixed liability was changed into a contingent liability by the renewal of the last note with his name as indorser. (3.) An executor may give or renew a note for his estate, without subjecting himself to any personal responsibility. (4.) A debt is an absolute obligation to pay a sum of money. (2 *Hill*, 220. 21 *Barb*. 437. *Webster's Dic. article "Debt." Tomlin's Law Dic. Crabb's Synonymes. French's Synonymes.*)

II. The liability of William E. Leggett, upon the note of William E. Leggett, executor, was not a debt due by him, within the meaning of the articles of association, because that liability was future. (1.) A debt due is a debt which is presently payable, the payment of which one party can tender, and the other party can demand. (2.) The 4th and 5th provisions of the same sections show that such must have been the intention

of the framers of the articles. The 4th article provides for selling the shares to pay the debt due. This could not be before the maturity of the obligation. (6 *Paige*, 121. 2 *P. Wms.* 297, 207. 2 *Wheat.* 390. 15 *Serg. & Rawle*, 140.)

III. The position of the plaintiff, in short, is this : The alleged lien of the bank can only extend to a " *debt due.*" This was neither a debt nor a contingent liability ; nor, if it was otherwise, was there any thing due for months after the demand or transfer thereof. The language of the articles must be construed strictly, as being in restraint of the transfer of property, and the exercise of what was otherwise a clear right. It could never have been contemplated by the signers of the article that a stockholder could not transfer any of his shares till he had cleared away every engagement or liability, direct or contingent, present or future.

IV. If the articles of association are to have the construction contended for by the bank, they are unreasonable, and cannot affect the rights of third persons, who have no notice of them. ,(*Mechanics and Farmers' Bank* v. *Smith*, 19 *John.* 116.)

*By the Court,* CLERKE, J. According to the referee's statement of facts, which seems to be correct, one James Thompson, in his lifetime, had certain promissory notes discounted for him by the defendants. These notes were indorsed by William E. Leggett, a stockholder of the bank. Thompson died, leaving them unpaid ; and William E. Leggett was appointed his executor, who from time to time reduced the amount of the notes by payments, having taken up the note of his testator and substituted his own. On the 9th April, 1855, some time after the death of Thompson, there remained due, on account of the notes, the sum of $1900 ; for which, on that day, Leggett made a note, payable at the defendants' bank on the 1st of August, 1855, signed by himself, as executor, payable to his own order, and indorsed by him.

It was admitted before us, on the hearing, that all the old notes were given up to Wm. E. Leggett by the bank, at the time he gave them the note for this balance ; so that it was not

Leggett *v.* The Bank of Sing Sing.

given as evidence of a previous indebtedness, but in lieu of it. It was not, therefore, I think, a mere extension of the claim, but a new indebtedness, so far as Leggett's liability was concerned. It is clear, at all events, that the bank, at the time of its refusal to transfer the stock, was not entitled to payment for any debt or liability incurred by Wm. E. Leggett, until the 4th August, 1855, allowing three days' grace.

The question, then, is whether the provision in article 5 of the defendants' articles of association includes all debts which the stockholders owe the bank, whether payable at the time the transfer of the stock is demanded, or at a future time.

The note for $1900, given to the bank, although signed by him as executor, made him, undoubtedly, personally liable for its payment; but I cannot discover any reason for supposing that this debt or liability was attended with graver consequences to him than if, for the first time, and as an original transaction, he had his note discounted at the bank, and put the proceeds in his pocket; or, with the proceeds, took up the notes of any other man. It can scarcely be pretended, if this were the case, that the bank could refuse the stock, on the ground that "a debt *was due*" by Leggett to them. If they could do that, the defendants, or any other bank adopting a similar article, may immediately after discounting a note on which the name of a stockholder appears, payable at any future time, refuse to transfer his stock. It is clear, if the construction insisted upon by the defendants' counsel were to prevail, that the article must apply to all cases where commercial paper, not yet payable, is held by a bank ; the debt being *due*, according to that construction. But this would be productive of so much inconvenience and embarrassment in a commercial country, that nothing but the most direct and explicit language should authorize us to declare that they possessed this right.

Besides, without any reference to the general effect of this construction, is it probable that at the time of the adoption of these by-laws by the stockholders, they designed to allow the interdiction on the stock for an obligation before the party

failed to perform it? When a man gives his note payable at a future day, it is an essential part of the contract that he shall not be called on to pay it, and shall in no respect be molested in relation to it, until that day shall arrive, and then he is pledged to pay it. This is the contract; and why should we say that a dealer with this bank is subject to greater liabilities, and exposed to more severe restrictions, than attach to any similar indebtedness to other persons? To entitle any creditor to so great an advantage, his right must be derived from very specific language, showing that this species of embargo was intended to apply to prospective, as well as present, obligations to pay. We ought not, therefore, as the defendants' counsel requires, to give the article in question a liberal construction in his favor.

By giving the words their natural and ordinary acceptation, in the connection in which they are employed in this article, we are able, without any violence to the words themselves, or to the context, to conclude that the debt must be payable at the time when the right to refuse the transfer is claimed. The words are " *debts due* by him (the stockholder) to the association." Indeed it may be affirmed, that every debt, whether payable now, or at a future time, may be termed a *debt due ;* this is implied by the word *debt* itself. Both are derived from the same Latin verb, (*debeo ;*) the one directly from it ; the other through the French *du.* But, in the commercial and popular acceptation of the word " due," when employed participially or adjectively after " debt," without adding some verb or participle denoting future time, it is equivalent with payable at the present time. "Due" is the synonyme of " payable;" and when it is asked if a promissory note is due, it plainly means it is now payable; and even when I speak of a *promissory note " due,"* without the verb, or " *a debt due,"* it just as plainly means the same thing—present liability to pay.

On the whole, it is reasonable to suppose that, in the article in question, the word was employed to signify debts presently

Dale *v.* Radcliffe.

payable, "the payment of which one party could tender, and the other party demand."

The judgment should be affirmed with costs.

[NEW YORK GENERAL TERM, September 14, 1857. *Mitchell, Clerke* and *Davies*, Justices.]